```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
F3EA Funding, LLC d/b/a/ SKY
FINANCIAL GROUP, LLC,                       MEMORANDUM AND ORDER
                                            Case No. 18-CV-01734 (FB) (RER)
                    Plaintiff,

    -against-

RAPID REALTY FRANCHISE LLC,
RAPID REALTY KENNSINGTON, INC.,
RR BULDOUT & CONSULTING, INC.,
RAYMOND RUIZ, ANTHONY LOLLI,
CARLOS ANGELUCCI,

                    Defendants.
-------------------------------------------------------x
```

Appearances:
*For the Plaintiff*:                          *For the Defendants*:
RYAN L. DICLEMENTE                            MICHAEL EINBINDER
SAUL EWING ARNSTEIN & LEHR LLP                EINBINDER & DUNN LLP
650 College Road East, Suite 4000             112 Madison Avenue, 8th Floor
Princeton, NJ 08540                           New York, NY 10016

**BLOCK, Senior District Judge:**

      Pending before the Court is the defendants' motion to dismiss the plaintiff's ("Sky's") complaint for failure to state a claim. Sky alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d); common-law fraud; and unjust enrichment. The Court grants the motion in part and denies in part.

1

## I. Factual Allegations

On a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all reasonable inferences in favor of the plaintiff." *Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. 2018).[1]

The defendants operated a real estate franchising business. Rapid Realty Franchise, LLC ("Rapid") sold "Rapid franchises" to entrepreneurs interested in "offer[ing] commercial and residential listing and other real estate services." ¶ 13.[2] Rapid Realty Kensington, Inc. ("Rapid Kensington") "was created to, among other things, provide start-up and build-out assistance and direction to Rapid franchisees." ¶ 16. "Specifically, Rapid Kensington purportedly identified franchising locations, negotiated leases with such locations, and assisted in the build-out of these franchise locations." ¶ 16. Later, RR Buildout & Consulting, Inc. ("RR Buildout") was created "as successor in interest to the buildout and consulting operations of Rapid Kensington." ¶ 18. Rapid, Rapid Kensington, and RR Buildout are, collectively, the three "Entity Defendants."

---

[1] The defendants attach exhibits to their moving papers that they say contradict some of Sky's allegations. They explain that the Court may consider this material because "Sky is both in possession of these documents and they were necessarily relied on in the Complaint." Dkt. No. 25, Ex. 7 ("Defendants Br.") at 6 n.1; *accord Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Because the defendants do not explain how one may infer that Sky "necessarily relied" on the documents, the Court declines to consider them and relies only on Sky's allegations.

[2] All paragraph references are to the operative complaint. *See* Dkt. No. 1.

Sky's principal met defendant Anthony Lolli in 2011. At all relevant times, Lolli was the sole owner and Chief Executive Officer of Rapid. Defendants Carlos Angelucci and Raymond Ruiz also worked at Rapid: Angelucci was Chief Operating Officer and Ruiz served in some other, unspecified position. ¶¶ 17, 19. Ruiz was also the owner and CEO of Rapid Kensington and later RR Buildout. ¶¶ 17, 18. Lolli, Angelucci, and Ruiz are, collectively, the three "Individual Defendants."

Over the course of several years, Sky and the defendants engaged in negotiations for financing Rapid franchisees. The defendants presented Sky with various financial projections as well as representations about the Rapid business model. As emphasized in Sky's complaint, the representations included the experience and credentials of candidate franchisees as well as the fact that the franchisees will not be charged a franchise fee. Sky extended "a total of $2,680,000 . . . to Rapid Kensington and RR Buildout & Consulting for the 25 franchisees across 5 different states." ¶ 50.[3]

The crux of Sky's allegations is that the funds that it advanced to help finance new franchisees were instead "improperly funnel[led] and convert[ed] . . . for the benefit" of the defendants. ¶ 78. In particular, Sky alleges that, contrary to the defendants' representations, franchisees *did* pay a franchise fee to the defendants

---

[3] Sky transferred funds to Rapid Kensington (and later RR Buildout), with the understanding that the funds were loans for Rapid franchisees. *See, e.g.*, ¶¶ 35, 39, 41, 43.

3

(from the money loaned by Sky), and that much of Sky's loans that were intended for financing franchisees was in reality used to finance the defendants' own "skeleton" operations, ¶ 78, which the Individual Defendants had implied were already mature and otherwise funded, ¶ 31. Sky explains that Rapid's aggressive growth model relied on lenders like Sky to continuously advance additional funds for poorly supported and often unqualified franchisees. Put simply, Sky alleges that the defendants were "engaged in a Ponzi-like scheme." ¶ 1.

Many of the franchisees have defaulted and Sky is unable to collect on its loans. ¶¶ 82, 114. Sky also alleges that "Rapid remains in possession of $33,758.00 for franchise locations that were never funded." ¶¶ 94–95. Despite Sky's demands to return the money, the defendants have refused to do so.

## II.     Discussion

"To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Progressive Credit Union*, 889 F.3d at 42 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### A.     RICO and RICO Conspiracy Claims

"To establish a RICO claim, a plaintiff must show: (1) a violation of 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (alterations omitted) (quoting *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d

4

Cir. 2013)). Under § 1962(c), "a plaintiff must show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Id.* (quoting *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001)).

The defendants argue that Sky fails to allege racketeering activity, an injury, or the existence of an enterprise.

### 1. Racketeering Activity

To allege a pattern of racketeering activity, a plaintiff must allege two instances of predicate acts occurring within a ten-year period. *See* 18 U.S.C. §§ 1961(1), (5); *Kim*, 884 F.3d at 103. Here, Sky alleges multiple instances of wire fraud as the pattern of racketeering activity.

To allege wire fraud as a predicate RICO act, the plaintiff must meet the heightened pleading requirements prescribed by Rule 9(b) of the Federal Rules of Civil Procedure. The allegations "should state the contents of the communications, who was involved, and where and when they took place, and should explain why they were fraudulent." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008) (alterations omitted) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993)). "In addition to alleging the particular details of a fraud, 'the plaintiffs must allege facts that give rise to a *strong* inference of fraudulent intent.'" *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 79 (2d Cir. 2004) (emphasis in original) (quoting *Moore v. PaineWebber, Inc.*, 189

5

F.3d 165, 173 (2d Cir. 1999)).  Finally, the alleged misrepresentations must be material.  *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 125 (2d Cir. 2018).

The defendants argue that Sky's wire fraud allegations fail all three requirements.  Their contentions are without merit.

Sky's allegations focus on seven phone calls.  For each phone call, it alleges who was on the phone call, what was said, and why it was fraudulent.  While it does not specifically allege what states the parties were in at the time of the calls, the Court may draw an inference in Sky's favor and credit its general allegation that the calls were interstate because the defendants were based in New York and Sky was based in Florida.  *See* ¶¶ 2–8.  And Sky alleges at least the month and year of each call.  Sky has pleaded wire fraud with sufficient particularity to enable the defendants to respond.  *See D'Addario v. Geller*, 264 F. Supp. 2d 367, 398 (E.D. Va. 2003); *In re Jamuna Real Estate LLC*, 365 B.R. 540, 552 (Bankr. E.D. Pa. 2007); *see also Qantel Corp. v. Niemuller*, 771 F. Supp. 1361, 1369 (S.D.N.Y. 1991) ("The pleading's fraud allegations must be specific enough to allow the defendant 'a reasonable opportunity to answer the complaint' and must give 'adequate information' to allow the defendant to frame a response." (quoting *Ross v. A.H. Robins, Co.*, 607 F.2d 545, 557–58 (2d Cir. 1979))).

With respect to fraudulent intent and materiality, Sky alleges that on at least two separate phone calls, one or more of the Individual Defendants stated that the

6

Rapid franchising system will not involve a franchising fee. *See* ¶¶ 26, 30. Sky plausibly alleges that the defendants repeatedly lied about franchises fees "to create the perception that the franchisees were permitted to invest all loan proceeds in their new businesses and operations." ¶ 26. In addition, Sky alleges that its counsel requested supporting documentation "[o]n numerous occasions" and was never provided it, ¶ 53, despite repeated assurance that documentation was forthcoming, ¶ 40. "[A] motive for committing a fraud and a clear opportunity to do so" suffices to meet the strong fraudulent intent requirement. *See Powers v. British Vita, P.L.C.*, 57 F.3d 176, 184 (2d Cir. 1995). Finally, in support of materiality, Sky plausibly explains why the lack a of franchise fee was an important business consideration.[4]

Sky has properly pleaded a pattern of racketeering activity through these two alleged instances of wire fraud. At this stage, the Court need not examine the remaining allegations of wire fraud to determine if they were also properly alleged.

## 2. Injury

The defendants argue that Sky has not demonstrated an injury because it "alleges only that there is a chance that the money it loaned to non-party franchisees may not be repaid," Defendant Br. at 21, which is insufficient for a RICO claim, *see*

---

[4] The defendants question how a sophisticated party like Sky would have possibly extended such a large sum of money based only on oral misrepresentations that were allegedly so important to it. That, however, confuses materiality with justifiable reliance, which is not an element of wire fraud. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 649 (2008).

7

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 767–68 (2d Cir. 1994). Sky clearly alleges, however, that "each of the 25 franchisees funded by [it] have defaulted on their loan obligations," and that it has "failed to receive a single loan payment for more than 90% of the franchisees since October 2017." ¶ 82. Moreover, it alleges that "at least 3 franchisees funded by [it]" have accepted a rescission offer that "Rapid was forced to offer" because of its "failure to comply with New York franchise law." ¶¶ 83–84. Sky alleges an actionable injury.

### 3. Enterprise

Section 1962(c) imposes the so-called "distinctness requirement": the plaintiff must name one or more "RICO persons" who are distinct from the "RICO enterprise." *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001); *U1it4less, Inc. v. FedEx Corp.*, 871 F.3d 199, 205 (2d Cir. 2017). Here, Sky alleges that the three Entity Defendants make up the RICO enterprise as an association-in-fact. *See* 18 U.S.C. § 1961(4) (defining an "enterprise" to include "any union or group of individuals associated in fact although not a legal entity"). The Court separately examines whether the Entity Defendants and the Individual Defendants satisfy the distinctness requirement.

#### i. *RICO Claims Against the Entity Defendants*

A RICO enterprise may be composed of corporate entities that are themselves RICO persons, so long as the corporate entities associate with each other to create

8

an enterprise that is sufficiently distinct from the entities individually.  *See Crabhouse of Douglaston Inc. v. Newsday Inc.*, 801 F. Supp. 2d 64, 78 (S.D.N.Y. 2011).  But as the Sixth Circuit has noted, "[t]he federal courts have encountered significant conceptual difficulties when attempting to apply the distinctness requirement in the context of complex relationships among affiliated and non-affiliated corporations and individuals." *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 490 (6th Cir. 2013).  One "important principle[]" that the court identified is that "corporate defendants are distinct from RICO enterprises when they are functionally separate, as when they perform different roles within the enterprise or use their separate legal incorporation to facilitate racketeering activity." *Id.* at 492. The Second Circuit also follows this principle, as is illustrated in three representative cases: *U1it4less, Inc. v. FedEx Corp.*, 871 F.3d 199, 205 (2d Cir. 2017); *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055 (2d Cir. 1996); and *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256 (2d Cir. 1995).

In *U1it4less*, an Internet retailer sued FedEx and two wholly owned subsidiaries.  All three companies were separate legal entities, were headquartered in different states, operated separately, and employed separate officers and directors. 871 F.3d at 201.  The alleged RICO enterprise was one of the two subsidiaries, while the RICO persons were the parent corporation and the other subsidiary.  Despite the formal separateness, the court held that the plaintiff did not overcome the

9

distinctness requirement because "no FedEx entity operated outside of a unified corporate structure guided by a single corporate consciousness," *id.* at 207, and there was no showing that the "choice of corporate structure was in any way related to (let alone used to further) the racketeering activity alleged in the complaint," *id.*

Similarly, in *Discon*, the plaintiff sued a company and two wholly owned subsidiaries. The alleged RICO enterprise was an association-in-fact between all three companies, each of which was also a RICO person. The court held that the plaintiff did not overcome the distinctness requirement because "the individual defendants were acting within the scope of a single corporate structure, guided by a single corporate consciousness." *Id.* at 1064.

Meanwhile, in *Securitron*, the alleged RICO enterprise was an association-in-fact between two formally unrelated closely held corporations and one individual who was each corporation's owner. Unlike in *U1it4less* and *Discon*, the court held that the distinctness requirement was met. In so holding, it emphasized that although the individual "was an officer or agent of each corporation, each was an independent entity that *could benefit from his nefarious activities*." *Id.* at 263 (emphasis added). Moreover, "[t]he two corporations [were] in distinct lines of business" and the separateness of the organizations was used to further the scheme. *Id.* at 263–64.

Here, the alleged RICO enterprise, made up of the three Entity Defendants, presents a similar distinctness question. Superficially, the arrangement is closer to

10

*Securitron* than to *U1it4less* and *Discon* because the Entity Defendants are not formally related (for example, neither is a subsidiary of the others). But in practice, the allegations are much closer to those in *U1it4less* and *Discon*. Sky does not allege that the scheme was in any way furthered by the legal separateness of the Entity Defendants. Nor does it allege that the Entity Defendants were engaged in separate businesses. On the contrary, the allegations suggest that the three Entity Defendants may have just as easily been separate divisions of one company. *Accord U1it4less*, 871 F.3d at 202.

Because the distinctness requirement is not met as between the Entity Defendants and the alleged enterprise, Sky's § 1962(c) RICO claim against the Entity Defendants is dismissed. Accordingly, the § 1962(d) RICO conspiracy claim against the Entity Defendants is dismissed as well. *See Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 113 F. Supp. 2d 345, 385 (E.D.N.Y. 2000) ("Under the law of this circuit, a claim under section 1962(d) alleging a conspiracy to violate the other subsections fails as a matter of law if the substantive claims based on the other subsections are defective." (citing *Discon*, 93 F.3d at 1064)).

      *ii.*    <u>RICO Claims Against the Individual Defendants</u>

In contrast to the Entity Defendants, the Individual Defendants are distinct from the alleged enterprise. In *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001), the Court held that the sole shareholder and president of a closely

11

held corporation is distinct from the corporation for § 1962(c) purposes. The relationship between the three Individual Defendants and the enterprise formed by the three Entity Defendants is directly analogous to the relationship between an employee and a corporation. The three Individual Defendants are each allegedly employees (and, in some cases, owners) of three corporations, who collectively are an alleged enterprise. The individuals are, of course, legally separate from the corporations. There is "nothing in the statute that requires more 'separateness' than that." *Cedric Kushner Promotions*, 533 U.S. at 163.

The RICO conspiracy claims also survive. To plead RICO conspiracy under § 1962(d), the plaintiff need only allege that the "conspirator . . . intend[ed] to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense." *Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003) (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)). "In the civil context, a plaintiff must also allege that the defendant 'knew about and agreed to facilitate the scheme.'" *Id.* at 377 (quoting *Salinas*, 522 U.S. at 66)). "[A] defendant's agreement to join a conspiracy can 'be inferred from circumstantial evidence of the defendant's status in the enterprise or knowledge of the wrongdoing.'" *N.Y. Dist. Council of Carpenters Pension Fund v. Forde*, 939 F. Supp. 2d 268, 282 (S.D.N.Y. 2013). Here, taking the allegations as true, the Individual Defendants joint participation on the fraudulent phone calls suffices for the RICO conspiracy claims, especially given

12

the closely held nature of the corporations that make up the enterprise and the fact that the Individual Defendants were high-level officers and owners of the corporations.

B. <u>**Common-Law Fraud Claim**</u>

"The elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (N.Y. 2009). The defendants persuasively argue that Sky cannot plead justifiable reliance.

Sky alleges that it only received financial documentation for the defendants' operations in August 2017, well after it extended funds. *See* ¶ 59. In October 2017, Sky "was further informed during a phone call that Rapid did not have the control over the Franchise bank accounts and operations as they stated." ¶ 66. It only learned in May 2017 that Rapid was not complying with New York franchise law and thus the franchise agreements (and, by extension, Sky's loans) may be subject to rescission. *See* ¶ 68.

"[I]t is not enough for a sophisticated party . . . to plead that it relied on . . . alleged misrepresentations; to state a cause of action for fraud, that reliance must have been justifiable, meaning that [the plaintiff] must allege the 'reasonable steps' that it took 'to protect itself against deception.'" *ACA Fin. Guar. Corp. v. Goldman*

13

*Sachs & Co.*, 32 N.E.3d 921, 924 (N.Y. 2015) (quoting *DDJ Mgmt., LLC v. Rhone Grp. L.L.C.*, 931 N.E.2d 87, 91 (N.Y. 2010)). Typically, this requirement means that "a plaintiff claiming to have been fraudulently induced to purchase a business, or to lend to a business, [must] allege that, before entering into the transaction, it availed itself of the opportunity to verify the seller's or borrower's representations through an examination of the business's books and records." *Basis Yield Alpha Fund Master v. Stanley*, 136 A.D.3d 136, 141–42 (N.Y. App. Div. 2015) (quoting *DDJ Mgmt., LLC* and collecting sources).

Sky argues that the defendants "ignore[] the over two years of due-diligence communications that took place between Plaintiff, the Defendants, and their principals, prior to making the first loan." Sky Br. at 23 (citing ¶¶ 21–51). But Sky does not allege that its "due-diligence communications" involved examinations of any financials or other documents. Merely relying on the defendants' oral representations is insufficient to show justifiable reliance.

Sky also complains that it could not have discovered "(i) the Defendants' non-existent support and training services; (ii) the franchise fees which the Defendants claimed they would not be charging the franchisees; or (iii) the fraudulent 'Ponzi-like' scheme by which the Defendants were funneling the loan proceeds for Rapid and the Individual Defendants' benefit." Sky Br. at 23–24. But Sky alleges that it repeatedly loaned money to the defendants, even though, for example, its counsel

14

was rebuffed when she repeatedly asked for "the executed franchise disclosure documents and agreements" for Rapid franchisees. ¶ 53. This should have been a red flag for Sky that it needed to investigate further before advancing further funds to the defendants. Sky's claim for common-law fraud fails for lack of justifiable reliance.

C. **Unjust Enrichment Claim**

"The theory of unjust enrichment lies as a quasi-contract claim." *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 274 (N.Y. 2009) (quoting *Goldman v. Metropolitan Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005)). The theory "contemplates 'an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties.'" *Georgia Malone & Co., Inc. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012) (quoting *IDT Corp.*, 907 N.E.2d at 274). "The plaintiff must allege 'that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered.'" *Id.* (quoting *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011)).

The defendants argue that Sky has not alleged that it extended loans with any conditions or with any particular date at which they must be paid back. But that is beside the point. Accepting Sky's allegations as true, it is neither equitable nor in good conscience to permit the defendants to keep the money. Sky's allegations

15

describe numerous material misstatements that induced it to advance the money at issue. Although Sky cannot meet the elements of common-law fraud, it is still able to demonstrate that the statements constituted wire fraud because, as previously stated, wire fraud does not require reliance. Money obtained through wire fraud clearly constitutes unjust enrichment.[5]

### III. Conclusion

The motion to dismiss is **GRANTED** as to the RICO and RICO conspiracy claims against the Entity Defendants, and as to the common-law fraud claims against all defendants. The motion is **DENIED** as to the RICO and RICO conspiracy claims against the Individual Defendants, and as to the unjust enrichment claims against all defendants.

**SO ORDERED.**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
June 18, 2019

---

[5] As the defendants point out, Sky's inartful drafting inconsistently alleges which entity is in possession of the $33,758.00. But that does not defeat the unjust enrichment claim because the claim is clearly brought against Rapid Kensington and RR Buildout, which is consistent with Sky's allegation that those are the parties to which it forwarded funds. *See supra* note 3.